1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
            slitteral@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NADIA SCHWARTZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANCE DATA SYSTEMS CORPORATION, COMENITY CAPITAL BANK, COMENITY SERVICING LLC, and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING<br><br>2.  CONVERSION<br><br>3.  UNJUST ENRICHMENT<br><br>4.  VIOLATION OF 15 U.S.C. § 1666c<br><br>5.  VIOLATION OF CAL. BUS. & PROF CODE § 17200, ET SEQ. (Unfair Competition Law)<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Nadia Schwartz (hereafter "Plaintiff"), individually and on behalf of all other similarly situated credit card account holders of Comenity (hereafter the "Class"), brings this consumer class action against Alliance Data Systems Corporation, Comenity Capital Bank, and Comenity Servicing LLC (hereafter "Comenity" or "Defendants") for purposefully rejecting on-time payments to charge late fees and interest on credit card statements.  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE CASE

1.      This is a class action against Alliance Data Systems Corporation, Comenity Capital Bank, and Comenity Servicing LLC for their unfair and predatory credit card services, which have detrimental effects on consumers' financial health.  Since 1986, Defendants have issued credit cards to consumers and, today, partner with high-profile merchants to provide private label and co-branded credit cards.   With nearly 150 partnerships with merchants, Defendants provide countless consumers with the presumed benefits of credit cards, such as purchasing power, ability to build credit history, and the opportunity to save money through rewards programs.

2.      However, the reality is that Defendants are harming consumers who have entrusted Defendants with their financial health.  Credit card usage is on the rise, and bad credit can have destructive repercussions on people's entire lives.  Credit scores represent a consumer's creditworthiness.  Two important factors in determining the score include (1) the consumer's ability to pay bills on time and (2) the amount the consumer owes the lender.  Thus, it is imperative for consumers to be able to pay their bills on time and/or in full.  Credit scores dictate essentially all aspects of life, such as student loans, car purchases, mortgages, cell phone plans, and health insurance.  Financial institutions, such as Defendants, hold their customers' lives in their hand and are required, by law, to conduct their business with integrity.

3.      Defendants abuse their position of strength by deceptively charging consumers with late fees and interest when, in fact, consumers pay their bills on time.  Defendants advertise the

ease of their services and boast of award-winning costumer service.  However, consumers who pay their bills on time through the online platform, mailing a check, or over the phone with a customer service representative are charged late fees and interest.  This creates a vicious cycle for consumers by making it virtually impossible to pay off their credit cards in full, thus harming their credit score.

4.      Accordingly, Plaintiff brings her claims against Defendants individually and on behalf of a class of all others similarly situated for (1) Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing; (2) Conversion; (3) Unjust Enrichment; (4) violation of 15 U.S.C. § 1666c, Correction of Billing Errors; (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and for (6) declaratory relief pursuant to 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendants.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.  Additionally, because this complaint involves violations of the 15 U.S.C. § 1666c and requests declaratory relief under 28 U.S.C. § 2201, this Court also has federal question jurisdiction under 13 U.S.C. § 1331.

6.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendants advertised and made available their credit card services to consumers in this forum.  That is, Defendants purposefully availed themselves of the protections and benefits of this forum, which are the subject of the present complaint.  Moreover, venue is proper because Plaintiff is a citizen of California and resides in this District, and because Plaintiff signed up for Defendant's credit card in this District.

## INTRADISTRICT ASSIGNMENT

7.      Assignment to the San Francisco or Oakland Division is appropriate under Civil Local Rule 3-2(c) and (d) because a substantial part of the events or omissions which gave rise to

Plaintiff's claims occurred within Contra Costa County, including Plaintiff's use of Defendants' services based on Defendants' offering and advertising of said services in this District.

**PARTIES**

8.      Plaintiff Nadia Schwartz is an individual residing in the State of California.  In March 2021, Plaintiff received her monthly Pottery Barn Credit Card statement for purchases made on February 19, 2021 and February 20, 2021.  Soon thereafter, on April 1, 2021, Plaintiff mailed a check to Comenity, the credit card service provider for Pottery Barn.  Plaintiff's check paid the invoice, $7,345.76, in full.  However, Plaintiff was informed by mail that the check she sent on April 1, 2021 was not cashed until April 19, 2021, incurring an interest charge of $153.94 and a late fee of $29.00 on April 16, 2021.  When Plaintiff called to complain, the late fee was waived, but the interest charge was not.

9.      Defendant Alliance Data Systems Corporation is a Delaware corporation with its principal place of business located at 3075 Loyalty Circle, Columbus, Ohio 43219.  Alliance Data partners with over 900 companies and online merchants to provide marketing, loyalty, and payment solutions.[1]  Alliance Data offers two products: loyalty marketing programing and credit card services.  The product at issue here, the credit card services, is offered through Alliance Data's subsidiaries, Comenity Capital Bank and Comenity Servicing LLC.

10.      Defendant Comenity Capital Bank is a Utah corporation with its principal place of business located at 12921 South Vista Station Blvd., Suite 400, Draper, Utah 84020.  Comenity issued its first credit card in 1986 and, today, offers consumers credit card services, savings programs, and certificates of deposit.[2]  Most notably, Comenity partners with high-profile merchants, such as Abercrombie & Fitch, Lexus, and Pottery Barn, to offer private label and co-branded credit cards.[3]  Comenity finances its operations through money market deposits, certificates of deposit, and credit card receivables.  Comenity's consumer retail deposit platform,

---

[1] Alliance Data Systems Corp., Annual Report (Form 10-K) (Dec. 31, 2020).

[2] Cynthia Bowman, Comenity Direct Review: Competitive Interest Rates from a Known Retail Store Card Provider (Jan. 15, 2021), GOBankingRates, https://www.gobankingrates.com/reviews/comenity-bank/.

[3] About Comenity, https://comenity.com/about.

Comenity Direct, comprised $1.7 billion of Comenity's $9.8 billion deposits outstanding as of December 31, 2020.[4]  Comenity also offers non-maturity deposit programs through contracts with third parties and, as of December 31, 2020, Comenity had $3.8 billion in money market deposits outstanding with interest rates ranging from 0.38% to 3.5%.[5]  Additionally, Comenity issues certificates of deposit ranging from $1,000 to $100,000 with maturities ranging from January 2021 to December 2025, and the annual interest rates range from 0.15% to 3.75%.[6]  As of December 31, 220, Comenity had $6 billion of certificates of deposit outstanding.[7]  Comenity also had $11.2 billion of securitized credit card and loan receivables.[8]  Comenity does not have any physical locations, so customers must interact with Comenity either online or over the phone.  Comenity provides their credit card services throughout the United States.  Comenity boasts that their "credit and savings products are designed to be safe, secure and empowering, and [that they are] consistently recognized for [their] outstanding and industry-leading customer care."[9]

11.     Defendant Comenity Servicing LLC is a Texas limited liability corporation with its principal place of business located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.  Comenity Servicing performs account-related functions for Comenity Capital Bank such as issuing billing statements and collecting amounts due.

## FACTUAL ALLEGATIONS

### A.     Credit Cards and Their Impact on Consumers' Financial Health

12.     Credit cards give consumers the ability to borrow money from a bank and to repay the bank at a later date.  After a consumer uses a credit card to make payments, banks send the consumer an itemized statement showing the total amount owed in the billing cycle.  Banks require consumers to pay between a specific minimum amount of the statement and the total amount of the statement at the end of each monthly billing cycle.  However, if a consumer does not pay the

---

[4] Alliance Data Systems Corp., Annual Report (Form 10-K) (Dec. 31, 2020).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] About Comenity, https://comenity.com/about.

statement by the specified due date, banks will charge the consumer a late fee, typically ranging from $28 to $39.[10]  Additionally, if a consumer does not pay the total amount owed at the due date, the balance carries over to the next month's statement.  In such an event, banks tend to charge interest in the form of an Annual Percentage Rate (hereinafter "APR"), typically ranging from 17% to 24%.[11]

13.    The use of credit cards has expanded rapidly in recent years.[12]  Credit cards are beneficial to consumers because the line of credit gives consumers purchasing power, the ability to build credit history, and often the opportunity to save money through rewards programs.  Increased credit card use can be contributed to the rise of e-commerce, especially during the COVID-19 pandemic.  For example, in 2020, e-commerce revenue in the United States totaled $431.6 billion, which is projected to be $563.4 billion by 2025.[13]  Additionally, psychological theories suggest that consumers pay less attention to the cost when placed on a credit card and view transactions as smaller when it is only a portion of one bill to pay at the end of the month.[14]  Moreover, research has shown that consumers are willing to pay 83% more in value for something if paid with a credit card than with cash.[15]

14.    Although convenient, credit card usage is not without its drawbacks.  Despite the United States having the largest Gross Domestic Product ("GDP") in the world, Americans have the most credit card debt.  In 2020, the average credit card holder in the United States had $5,315 of credit card debt, as opposed to $1,728 in China (second largest GDP) or $2,900 in Japan (third

---

[10] Jessica Merritt and Rebecca Lake, What Happens When You Pay Your Credit Card Late? (June 17, 2019), https://creditcards.usnews.com/articles/what-happens-when-you-pay-your-credit-card-late.

[11] 2019 Credit Card Fee Study: What's Normal and What's Not? (June 4, 2021), https://creditcards.usnews.com/articles/fee-survey.

[12] For instance, from 2015 to 2016, the number of card payments increased by 10.2%.  Bailey Peterson, Credit Card Spending Studies (2018 Report): Why You Spend More When You Pay With a Credit Card (updated Jul. 15, 2019), https://www.valuepenguin.com/credit-cards-credit-card-spending-studies.

[13] Retail e-commerce revenue in the United States from 2017-2024 (March 2021), https://www.statista.com/statistics/272391/us-retail-e-commerce-sales-forecast/.

[14] "Salience theory" indicates that consumers pay less attention to cost when put on a credit card rather than paid in cash, and "coupling theory" indicates consumers perceive purchases as smaller when they are paid off on one credit card bill.  Bailey Peterson, Credit Card Spending Studies (2018 Report): Why You Spend More When You Pay With a Credit Card (updated Jul. 15, 2019), https://www.valuepenguin.com/credit-cards-credit-card-spending-studies.

[15] Id.

---

largest GDP).[16]  There are 183 million American credit card holders and, in 2019, that meant Americans collectively owed $974.2 billion in credit card debt.[17]  Further, in 2019, Americans spent an average of $753.80 towards credit card *interest*.[18]

15.     The use of credit cards, and the ability to pay that debt off, is important because it plays a vital role in credit scores.  Credit reporting agencies calculate consumers' credit score, on a scale of 300 to 850, to represent a consumer's creditworthiness.  The two primary factors in producing a credit score are (1) the consumer's ability to pay bills on time and (2) how much the consumer owes the lender.[19]  Thus, paying statements on time or paying off statements in full could be very beneficial for consumers.  Alternatively, delayed payments and carried over interest could lower a consumer's credit score and have rippling effect on the consumer's life.

16.     For consumers, the amount owed on their credit card can quickly multiply in response to the APR.  If a consumer carries a balance from one billing cycle to the next, the APR dictates how much interest will be paid on the remaining balance.  Although APR is expressed as an annual rate, the APR is used to calculate interest charged in the monthly billing cycle.  Further, one credit card can have different types of APR.  For example, the "purchase APR" is the rate for purchases made with the credit card.  The "introductory APR" is a promotional, and temporary, rate that a consumer receives when they sign up for the credit card (*e.g.,* for the first year of signing up for the credit card, all APRs will be 0%).  The "penalty APR" is the rate applied when the consumer makes late payments or violates any other terms of the agreement – this is usually the highest APR.  Because the APR is applied to the remaining balance each month, the interest compounds and the consumer's debt grows exponentially when a consumer carries a balance for months – or years – at a time.  For instance, if a consumer has $1,000 in credit card debt, an APR of 15%, and makes the minimum payment of $25 per month, that consumer will accrue $400 in

---

[16] Average Credit Card Debt Statistics (Updated Jan. 2021), https://shiftprocessing.com/credit-card-debt/.

[17] *Id.*

[18] *Id.*

[19] Although a credit score calculation incorporates a consumer's history of paying off any type of loan (*e.g.,* student loan, auto loan, etc.), the consumer's history of paying off credit card debt is a major component of the calculation. Bev O'Shea, What Is a Credit Score, and What Are the Credit Score Ranges? (Jul. 18, 2021), https://www.nerdwallet.com/article/finance/credit-score-ranges-and-how-to-improve.

interest.[20]  Effectively, this creates a vicious cycle where the debt grows and the consumer's credit score continually falls.

17.     Not only does a credit score determine whether a consumer is approved for a credit card, student loan, apartment lease, mortgage, or auto loan, but can also influence the terms of these agreements.  For example, if a consumer has a low credit score, then the consumer will not get an optimal mortgage rate, meaning the consumer will pay more on the mortgage over time. This is demonstrated with the following illustration:  A consumer desires to purchase a $300,000 home with a 20% down payment and 30-year fixed-rate loan of $240,000.[21]  With an "excellent" credit score, this consumer would get a 4% rate, so that consumer will pay $1,164 a month on the mortgage.  If the consumer has a "good" or "fair" credit score, the consumer might get a 4.5% rate, so the consumer will pay $1,216 a month.  The difference seems minimal, but over the years it takes to pay off the mortgage, that is a $25,300 difference.  The impact of a consumer's credit score is not limited to mortgages – it impacts essentially all aspects of life, such as buying cars, renting an apartment, applying for student loans, refinancing loans, getting cell phones, setting up utility accounts, or paying for health insurance.

18.     Although a credit score is an essential aspect of Americans' lives, it is extremely difficult to improve credit scores.  One of the "easiest" ways to improve a credit score is to make payments on time.  However, doing so has become challenging for many in light of the COVID-19 pandemic.  In February 2020, the unemployment rate in the Untied States was 3.5%, which is considered very good.[22]  President Trump declared a national emergency on March 13, 2020, and unemployment reached 14.8% by April 2020, which is the highest rate since researchers began

---

[20] Latoya Irby, What to Know About Credit Card Interest Rates (Feb. 7, 2021), https://www.thebalance.com/credit-card-interest-rates-explained-960225.

[21] How Credit Score Affects your Mortgage Rate (Sept. 15, 2020), https://www.nerdwallet.com/article/mortgages/credit-score-affects-mortgage-rate.

[22] John Csiszar, How Hard Did COVID-19 Impact the US Economy? (July 5, 2021), https://www.gobankingrates.com/money/economy/how-hard-did-covid-19-impact-us-economy/.

collecting this data in 1948.[23]  Although unemployment rates are on the decline, consumer prices have continued to surge.[24]  As a result, Americans are struggling to make their payments on time.

### B.   Comenity Charges Customers Late Fees And Interest

19.   Despite the important role credit card companies play in consumers' financial health, Comenity exploited its position.  Comenity disabused consumers of the notion that if they follow the terms of their agreement, they can pay their balances in full and build their credit scores.  As demonstrated below, Comenity denies consumers the ability to pay off their balances on time – regardless if the payment is made online, via mail, or over the phone.  As a result, Comenity profits from late fees and interest.

20.   Defendants offer a wide selection of available credit cards.  Specifically, Comenity offers what are called Comenity Bank Retail Store Credit Cards.  Comenity offers its services to consumers through nearly 150 retail stores, including Abercrombie & Fitch, Lexus, and Pottery Barn, amongst others.  Comenity's account holders are subject to "up to $40.00" in late fees, if a consumer does not pay the minimum amount owed by the due date.[25]  Comenity also imposes an APR of 26.99%, which is the interest that is owed on the amount of the invoice that the consumer does not pay off at the end of the billing cycle.

21.   Comenity agrees that "[p]aying your bill shouldn't be a hassle."[26]  Despite consumers' deliberate effort to pay off their Comenity credit cards on time and, often in full, Comenity repeatedly charges consumers late fees and interest.  As demonstrated below, this has occurred regardless of whether consumers make their payments online, with a check through the mail, or even directly over the phone with a customer service agent.

### 1.   Through Online Payments

22.   Comenity has an online portal for each of the credit cards with the respective merchants.  Comenity allows consumers to pay their statements online, through these portals, and

---

[23] *Id.*

[24] Lucia Mutikani, U.S. Consumer Prices Post Largest Gain in 13 years; Inflation Has Likely Peaked (July 13, 2021), https://www.reuters.com/business/finance/us-consumer-prices-surge-june-2021-07-13/.

[25] See Exh. A Comenity Bank Bill Payment Terms and Conditions.

[26] Account Resources, https://comenity.com/resources.

---

advertises that "all online payments submitted before 8 p.m. EST can be posted to [the consumer's] account on the same day."[27]  Despite this promise, Comenity charges consumers late fees and interest who have paid their statements on time and online.

23.     On May 16, 2020, a consumer wrote to Better Business Bureau ("BBB"): "I have already paid off my . . . account.  I have had numerous 'late fees' added to it and it's over $650.  A lot of the times I would pay online because I don't have good service at my house.  99% of the time I would get an "error" message saying that it was on YOUR side but it didn't matter I was still going to get a late fee.  I feel that technical and server issues when paying online are not the customers problems and we should not have our credit ruined because of your mistakes.  I feel like I was done very dirty with this credit card company.  My account has been sold to another creditor but they're a bunch of late fees that are not my fault and I wish you all would just fix it once and for all.  You all have agreed to delete it several times but yet it always comes back on my credit report with more money added to it.  Why does this keep happening and what needs to be done in order to fix it?"

24.     On November 5, 2020, another consumer wrote to BBB: "Comenity [B]ank had my due date for my bill set as 11/4.  I had a balance of 267 dollars left.  I went in to pay my bill on 11/4 at 9 am and noticed a 0.00 amount for what was due.  I paid 30 dollars anyways because I knew my bill was due on 11/4.  It states on their website that to avoid late [fees] to pay by 6 pm est on your due date.  Now they are saying I am being charged a late fee and my balance is now 317 dollars.  I have screenshots for proof of payment at 9:18 am and how much and also my billing statement saying my payment was due on 11/4.  I reached out to them yesterday (11/4) about my concern about the 0.00 for payment due and they told me I have a late fee now.  They also put my check under a different account last time and put on a late fee and reported it and my credit was affected.  So due to their error twice my credit is affected and I have a late fee I shouldn't have to pay due to my payment not being late."

---

[27] *Id.*

25.     On November 7, 2020, another consumer wrote to BBB: "Every month I do payments online.  Every month they would turn the payments around then charge me late fees and return check charge.  They have been doing this for over a year maybe longer[.]"

26.     On February 23, 2021, a consumer wrote to the Consumer Financial Protection Bureau ("CFPB"): "I pay my bills on time every month through my online bill pay.  In XXXX I made a payment on my Comenity XXXX XXXX paying the balance in full.  That payment was to be received by Comenity on XX/XX/XXXX.  Today I received a statement with a [$31.00] late fee stating the payment was posted on XX/XX/XXXX.  I have been charged a late fee even though my bank states the payment was pulled by Comenity on time XX/XX/XXXX.  I [have] had to call Comenity twice to get the late fee dropped.  The first person I spoke to said there was nothing she cold do other than issue me a courtesy [$15] credit and the next person I spoke to said, you have to specifically ask for something?  What?!!! Needless to say, I have paid off this card and now will be canceling it.  This all seems very shady to me and makes me wonder how many people they do this to and get away with it.  I would appreciate all your help in investigating these matters."

27.     On May 11, 2021, another consumer wrote to CFPB: "I paid the amount owed.  However, every month the bill me for late charges.  I paid at first because I did not want them to ruin my credit.  I just kept getting late charges for months.  I finally sent a final payment and asked them to close account.  I received a letter stating that they closed my account.  However, every month they bill a late fee.  This is not any amount I owe on merchandise.  It is only monthly late charges that I do not owe."

### 2.     Through Mailed Payments

28.     Comenity also allows consumers to pay off their balance by mailing a check and "recommend[s] allowing a week for the payment to arrive."[28]  Despite consumers proactively sending their checks to Comenity to avoid late fees, including overnight shipping, Comenity does not cash the checks upon receipt and instead wrongfully penalizes consumers.

---

[28] *Id.*

29.     On April 4, 2020, a consumer wrote to BBB: "I sent them a check when I received my mailed statement and it has been over a month and the payment has not been applied to my account.  They have lost . . . and [are] refusing to make the issue right.  I have been in multiple contacts with them and no resolution.  This to me is fraud."

30.     On April 29, 2020, another consumer wrote to BBB: "On 12/11/19 I paid my last payment on account, they failed to process it for over 45 [days], thereby claiming it was late, the payment as all payments were sent via U.S. POSTAL MONEY ORDER, and sent day bill arrived, ..they called me claiming [late fee,] spoke over an hour on phone Armando laughed told me to sue them that there was [nothing I could] do but to pay up?.."

31.     On May 5, 2020, another consumer wrote to BBB: "On 19 February I sent a check to pay all charges on my . . . (Comenity Bank) credit card.  The check never cleared our bank.  We were charged a late payment fee in March.  On 16 March 2020 I called and was told they did not have my check.  On 23 April, I paid $20 for a "stop payment fee" at my bank for that check (amount $2,633.40), as I was afraid that it might have fallen into a crook[']s hands.  Every time I called Comenity Bank, they said they did not have my check.  Yesterday, 05 May 2020, I received a statement showing they received the check (nearly 3 months later), tried to process it, but was refused due to the stop payment at our bank, and then CHARGED me $29 for a returned payment. Not only am I out $20 for the stop payment for the check, Comenity charged me $29 for the returned payment.  A total charge to me for $49 for a check they didn't process on time!  After calling the bank, and talking to both a representative, and her supervisor, I was told, "Even though I am Premier Card holder, they don't remove returned payment" charges.  I have paid this account in full nearly every time.  With the Fed Fund rate of 0% and Comenity Bank charging 18.24% on their accounts, they would not remove this charge.  It was THEIR FAULT!!! Have put card in drawer, to never use again, and paid fee for a zero balance, and won't do business with that bank ever again.

32.     On June 15, 2020, another consumer wrote to BBB: "Comenity [B]ank cashed checks and did not apply them to my account.  I spoke with reps, wrote dispute letters with copies and spoke with supervisor.  They refused to correct their actions."

33.     On June 18, 2020, another consumer wrote to BBB: "[K]eep getting billed and charged late fees paid off balance by a money order dated 06-09-20 mailed off payment due 06-10-20 and still charged another late fee [I] want this company to leave me alone [I'm] paid in full[.]"

34.     On January 11, 2021, another consumer wrote to BBB: "I mailed my check to Comenity on 12/10.  On [12]/23 I received a text saying my payment was due in a week.  I called Comenity.  They said to give it another week.  On 12/29 I checked to see if my payment had cleared my bank.  It had not.  I called Comenity asked what to do, and the rep recommended I do an ACH transfer from my checking.  I did that and have the email from JJill/Comenity to prove it.  I asked the rep what would happen to the lost check.  He told me to put a stop payment on it.  I did.  I assumed all was taken care of.  On 1/10 I got a text to call Comenity.  I called and they said they had added a late charge because I hadn't paid.  I told them that I have the email to show I paid.  They said my bank rejected the payment.  I called my bank.  They said they only rejected the check which I had put a stop on, and that Comenity had not presented the ACH request.  Comenity said they had no evidence of an ACH request.  I have the email confirming they do.  I have called both my bank and Comenity numerous times."

35.     On January 20, 2021, another consumer wrote to BBB: "I received a bill from Comenity Bank which was due on the 21st of December 2020.  I made my payment in full for that statement balance and mailed it on the 4th of December 2020.  Especially during this time of Covid suffering and Holiday Season, I do not want to incur any interest on my cards.  Since I required to write out 2 checks, I mailed them in and gave myself enough time.  I had never experienced any issues with the mail.  To my surprise, it is only today, January 20, 2021 that the check has posted to my account.  Comenity has tacked on a fee of $43.31 to my balance claiming that the payment was not mailed with sufficient time, yet Comenity refuses to acknowledge or help, especially during this time of crisis.  I seek to have this fee reversed as I find it very abusive that this company proceeds to take monies form someone who has already paid them.  They offer the worst customer service that I have ever experience and if nothing else, I would hope that this is not the experience for others.  It is a very unjust system that Comenity Bank is practicing."

36.     On March 29, 2021, another consumer wrote to BBB: "In January, 2019, I purchased eyebrow makeup from a local Ulta Beauty.  They referred me to COMENITY – Ultamate Rewards MasterCard to receive a discount.  I later received an invoice for $26.59 from COMENTIY.  This was due on February 10, 2020.  I paid the bill on February 8, 2020, check # . . . , and mailed it on February 10, 2020.  On February 13, 2020, I received a Thank You for paying the Bill, along with a Late Fee and Interest Charge, totaling $28.59.  I called COMENITY and was told the payment was received on February 13 and they did not have a grace period.  I have since received monthly statements, with increasing Late Fees into hundreds of dollars.  In March 2021, I received a notice that COMENITY CAPITAL BANK was the original Creditor but that the current Creditor is . . . from Troy, MI. . . . has indicated that in looking through all records, they have concluded that their information is accurate.  They also indicate that my account will be written off as a bad debt and reported to three major credit bureaus.  All this over a $26 invoice received by them one day late!  It's incredible the money they have paid off staff and mail services over more than one year of invoices."

37.     On May 4, 2021, another consumer wrote to the CFPB: "I refinanced my mortgage for a lower rate and to consolidate debt.  I paid off several credit cards.  No problems there except one company said they did not receive the check.  Comenity Bank.  [They] said payoff check was still not received by Comenity.  A stop payment was placed and new check was issued.  Comenity was advised.  It was overnighted (on a Friday) and received and signed for by Comenity.  I received notice that Comenity received the check, paid off my credit card, and sent me a refund of {$20.00} because it was overpaid.  I received notice that the check was returned for a stop payment.  What happened, was they applied the check that was stopped, which they informed of, and added interest, returned check and past due fees now to my account.  I have proof . . . and a tracking number that they received and signed for the new check.  They are telling me they never received it.  So I had to call yet again . . .and they are sending me dispute papers."

### 3.     Through Phone Payments

38.     Comenity's wrongful behavior extends to payments made over the phone.  On October 14, 2020, another consumer wrote to CFPB: "This company does not offer automatic

monthly recurrent payment . . . I received a call that my account was late, I make the total payment over the phone, [w]hich [] I though[t] it include[d] the late payment fee . . . I noticed a charge for {$37.00} . . . I called the company and spoke with a representative . . . I want[ed] to pay all my balance including the new last payment fee . . . but the charge wasn't post it in the account yet. [T]hey did not want to charge me because I have to wait for the charge to be posted to the account. However, it's two days after, they know I will have another late fee and they don't want to charge me yet.  I am trying to explain that I might forget to call again before the due date, therefore they will keep charging late fees.  This company doesn't offer an automatic recurrent payment very inconvenient for the customer and convenient for them."

39.     On November 12, 2020, another consumer wrote to BBB: "I have been a long time consumer of . . .  credit card which is own[ed] by Comenity Bank.  I used my card once in a while, when made a purchase recently, I didn't receive a bill in the mail.  I called in made a payment with representative gave my checking account number for payment and she recorded the wrong account number while I thought my payment was made realize it was not.  Made second payment over phone when realize first payment wasn't deducted from my account.  Paid account in full BUT Comenity Bank is reporting account late and to collection agency.  I never received notice that account was late or in collections.  Comenity Bank have reported incorrect information to credit bureaus.  I would like accurate information on my account and credit report[.]"

40.     On November 24, 2020, another consumer wrote to BBB: "For the last few months I have been making payments towards by my [W]ayfair account by phone via customer service representative.  I was speaking with them and told that I had not been making my payments.  I told the rep that I had already made my payment and that the money was taken from my account.  I was told then that I needed to call their dispute dept.,[]and did so.  I have yet to be refunded, nor has my credit account reflected the payments so far."

41.     On April 26, 2021, another consumer wrote to CFPB: "I made a payment by phone to []Comenity Bank to take care of an outstanding balance.  My online account could not be accessed for reasons unknown to me.  Since I could not see my account, I paid the amount the agent told me was due to make sure my account is paid in full. It appears that amount was incorrect

that I was told. FYI, Comenity has discontinued the [] Credit card so it is reported as a closed account for this reason. But the impact to my credit is very much current.  This has a resulting in a late payment, the only one across 43 accounts in over 11 years.  I wrote to []Comenity and shared this mistake with them via their messaging center within their payment platform.  I asked for the late payment to be removed.  [A customer representative] responded assuring me the payment would be removed as I requested.  Instead, the late has remained and that conversation no longer displays in the []Comenity secure messaging center.  I have contacted the company regularly . . . Instead, I receive no response to my request, however the company adds further negative comments to my credit report, which have decreased my credit score.  I have disputed this with the credit bureaus but Comenity responds that it is accurate, although [the representative] responded that it would be changed due to their mistake, and the negative impact to my credit continues.  I would like the 1 late payment they made due to an error on their part of failing to notate my account properly removed."

### C.   Comenity Creates Chaos For Customers

42.   Comenity advertises that they are "committed to making each experience with [them] exceptional."[29]  Comenity boasts that they have "won the Certificate of Excellence from BenchmarkPortal 15 consecutive times – a record for the financial services industry."[30]  Further, Comenity advertises that their "award-winning customer care representatives are trained, knowledgeable and eager to help [their 50 million cardmembers]."[31]  However, Comenity has not kept its promise of exceptional customer service.  Customers who have been wrongfully charged for late fees and interest were either unable to establish contact with Comenity or, when they did, encountered issues.

//

//

//

---

[29] Customer Care, https://comenity.com/about/award-winning-customer-care.

[30] Id.

[31] Id.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.   Comenity Customer Service Representatives Purposefully Mislead Customers

43.     When consumers reach out to Comenity's customer service representatives, the consumers are met with unclear and – often times – incorrect information.  Comenity's "exceptional" customer service includes empty assurances, calls cut short, and conflicting information.  These tactics of confusing consumers and creating logistical nightmares makes it nearly impossible for consumers to remove themselves from a vicious cycle of wrongfully charged late fees.

44.     On February 22, 2020, another consumer wrote to BBB: "I called this business to obtain the information from the Late Fee, and they refused to provide me with any details.  The customer service hung up on me.  Again, this account was never paid late, so [C]omenity [B]ank is fraudulent pushing customers to pay for accounts that are CLOSED!!!  [T]his is fraud![] I wish you can investigate this claim [I] am sure that there is a lot of people claiming for fraudulent charges like this one.  I do not recognize this care, it is not mine.  My account has been paid in full and closed . . . .  I will never ever use this service."

45.     On March 30, 2020, another consumer wrote to BBB: "On March 24th, I spoke to a customer service representative that assured me that my balance with [Comenity]. . . would be $0 and it would be reported as such.  On March 30, 2020, it was reported to . . . that I am 1.) 30 days passed due 2.) possess a balance of $89.  BOTH of these pieces of information are incorrect and I demand that information be updated and adjusted."

46.     On November 1, 2020, another consumer wrote to BBB: "Paid BALANCE of account IN FULL on DUE DATE May 18th.  Got a bill this month for interest on balance which was supposed to be paid in full on [M]ay 18 which was the due date.  Contacted the number on the statement in . . .  he said it was for the time it was paid past the due date.  I informed him it was a bank transfer on the due date.  There was no balance after the due date.  I also contacted the office in Ohio with the number you provided and the girl agreed that there should have been no charge since it was paid on the due date.  She said since after verifying all the information, [I] was not on

the card that and she could [no] longer talk to me about it.  I told [her] fine [I] would continue my complaint with you.

47.     On November 3, 2020, another consumer wrote to CFPB: "I tried to close my account with Comenity . . . .  I contacted their customer service line to get my balance. . . .  I paid this amount at that time, however there was some sort of lag in billing (item delivered late, and Ann Taylor did not charge the amount until item shipped).  This resulted in a new charge to my account that I was unaware of . . . .  I became aware that I had been charged for the item that shipped late to my card, which was supposed to have been closed at the time.  Note: Comenity still allowed the charge, then charged interest on top. . . .  When I realized they had allowed the late charge, I again contacted their customer service line, got my 'payoff' balance, and paid that amount, unaware that Comenity had tacked on a finance and service charge . . . .  I again became aware of a remaining balance (which was only from "late" fees and interest), which I AGAIN paid.  Comenity again stated it was late, and charged an additional late fee and internet charge.  At this point, I am paying interest and late fees on nothing but interest and late fees."

48.     On November 9, 2020, another consumer wrote to BBB: "I called this company on October 6th and spoke with a representative.  I asked her what my balance was, and that I would like to pay in full.  She said it was $465.47.  I paid my balance in full.  I now have a bill due from them for $76.  I called them today and asked what it was for and they said because the payment was 4 days past the due date, there was a late fee.  Then, again in November they charged me another late fee and I was not even notified that I had a balance.  I spoke with Supervisor . . . ID number . . . and she said that the representative didn't know there was a late fee at the time.  That is not my fault and I should not have a balance with this company.  Any fees should have been included on the day I made the payment.  I do not feel I owe this company anything."

49.     On December 3, 2020, another consumer wrote to BBB: "The bank effect[ed] my credit score with false information, delinquent payment.  Auto pay put in place in 02/2019 for 6 months I have made all payments plus more.  I called they were very rude there was a Karen moment she hung [up] on me.  I am very upset, I tried to resolve issue no one has return[ed] my

calls.  One of the reps gave me the wrong P.O. Box info so I couldn't resolve my issue.  I also have bank [s]tatement of my auto pay coming out each month on time."

50.     On December 18, 2020, another consumer wrote to CFPB: "I never missed a payment.  I paid every month in full and on time.  I closed the account after it again was paid in full.  I am consistently receiving harassing calls that I cannot talk to answer, stop them, or anything.  The calls JUST started . . . .  I do not understand why.  I have not had an active . . . card in YEARS.  No debt."

51.     On February 1, 2021, another consumer wrote to BBB: "Upon reviewing my bill I discovered that I had received late fees the last two months.  Knowing that I haven't been late I reviewed my previous statements.  Payment due 9/4/2020—I paid this payment on 8/15/2020[.]  Payment due 10/4/2020—I paid this payment on 9/12/2020[.]  Payment due 11/4/2020—I paid this payment on 10/10/2020[.]  Payment due 12/4/2020—I paid this payment on 11/7/2020 charged $29.00 late fee[.]  Payment due 1/4/2021—I paid this payment on 12/5/2021 . . . charged $40.00 late fee[.]  I called the number on my statement to see about why I was charged these fees and to attempt to get them reversed.  I was successful in getting the $40.00 late fee reversed but . . . to get the $29.00 late fee reversed because I was told I can't pay bills early.  I spoke with both . . . who answered the phone and . . . who was his supervisor.  Neither one was rude, but I felt like I've been punished for paying my bills on time.  At first . . . says he always recommended early payment, but when he saw my payments his story changed.  I also feel that because I owe them money, I have no recourse.  What choice [do] I have?  If I stop paying them, it will be my credit that will tank!  I just want my $29.00 back.  I'll try to not send my payment sin early anymore, but I just want to make sure my payments are made on time.  I don't want to be penalized for paying early."

52.     On March 3, 2021, another consumer wrote to BBB: "I missed a payment due on 10.20.2020 on my The Children's Place Rewards Credit card . . . . I called customer service on 10.24.2020.  I made a $100 payment that day and set up a future payment for the remaining balance to be automatically withdrawn from my bank account on the next due date (11.20.20).  The customer service representative confirmed that would pay my account in full.  I specifically asked the representative to verify that and I assume such can be confirmed via existing audio recording of

the call.  To my surprise, I received a credit monitoring alert stating that my Children's Place was 30 days past due. . . . I reviewed with the representative what I just transcribed, and she explained that the representative did not process the payment for the Balance in Full at the time of payment (11.20.20) but rather, the remaining balance as of the date of the original call on 10.24.20.  After that a $39 late fee applied.  As a courtesy, the representative removed some of the fees and I just paid the remaining balance . . . (03.03.21).  After I hung up the phone, I received ANOTHER credit monitoring alert stating my account was now 60 days past due.  My credit score has dropped over 100 points now because of an account that I, in good faith, called to PIF and assumed had a zero balance.  My credit is being negatively impacted because of an error by a Comenity representative that I should not be held responsible for.  Also, beyond the original $39 late fee, I should not have to pay any additional fees.

53.   On March 14, 2021, another consumer wrote to CFPB: "I paid my balance in full on three separate occasions and they continue to bill me . . . .  The balance was paid in full . . . .  I called the company and I was told my balance was {$24.00}, so I paid it.  I checked my account and I had another balance of {$11.00}.  I paid the balance in full.  I have been paying cash for my purchases instead of using the card, because of so many problems.  They keep billing me . . . .  I received a call today [] stating that they sent a balance to collections for {$40.00}.  I checked my balance and I went from {$0.00} to {$73.00}."

54.   On March 23, 2021, another consumer wrote to BBB: "On March 22, 2021, I received a bill from Wayfair-Comenity Bank, regarding an April 26, 220 charge.  At that time, in 2020, Wayfair used Comenity Bank as their credit card issuer. . . . I paid the charge May 2020.  I called Wayfair at ###-###-#### and they verified that the account was paid.  I called Comenity Bank back today, March 23, 2021, to dispute the charge.  They left me on hold after "Eva" could not assist me.  They suggested that I call Wayfair.  I told them that I did and that charges were satisfied.  I was "transferred" to empty air.  I am afraid that they will not investigate these charges and will try to levy fake "late fees" on me. . . . I am in this endless loop for the fraudulent billing."

55.     On April 15, 2021, another consumer wrote to CFPB: "I tried to send them a letter . . . asking for proof that I was late on payment because they are reporting erroneous inconsistent account information. . . . I never received any response from them . . . ."

**2.     Comenity's Online Platform Does Not Function Properly**

56.     The consumer experience is not only inadequate over the phone, but also on Comenity's online platform.  Comenity's online platform rejects payments, thus making late fees inevitable for consumers, and the online messaging does not provide the service to customers as advertised.

57.     On September 1, 2019, another consumer wrote to CFPB:  "I opened an account . . . which is held with Comenity Capital bank . . . I consistently made the payments on time and in some months twice in the same month.  Their computer system erred in not applying some of these payments and as a result charged me an extra {$38.00} late fee.  I have documentation that these payments were on time and consistent. Comenity Bank refuses to remove late fee even with several letters and phone calls."

58.     On July 15, 2020, another consumer wrote to BBB: "I paid my balance in full April 2020.  I received another bill with a finance charge in May and late fees and finance charges have been added on since then.  I have sent numerous written inquiries to customer service through my online account secure messaging.  I consistently receive general replies explaining what occurs when payment is late but not address that I paid my balance in April 2020.  I have been unable to get resolution at this time and Comenity has reported late payment to Transunion."

59.     On October 14, 2020, another consumer wrote to BBB: "On September 21 I submitted a payment to Comenity Bank for my Victoria's Secret account and 10 days later I received an email . . . advising me that my payment could not be delivered and was returned.  I contacted Comenity Bank and was advised that they don't know why my payment was not accepted and that I am still responsible for the late fee.  I called [customer service] on 10-8 and was told although new acct numbers were given out, my payment should not have impacted.  I have emailed [] reps with no assistance via secure messaging center[.]"

60.     On October 16, 2020, another consumer wrote to CFPB: "I have had an ongoing issue since 2017 with this company where they are mixing my and my sister 's account as we have very similar names and social security numbers.  Each month when a payment is due, I manually make a payment online, however, the payment is being applied to her account and not mine.  I then begin receiving phone calls from Comenity Bank/Victoria 's Secret saying that my account is past due although I had already made a payment.  They are also merging our personal information and my phone number is being applied to her account and vice versa.  This has been causing me tremendous XXXX for the past 3 years and causing unnecessary late payments and late fees on my credit file, which are ultimately affecting my credit score and increasing my balance and interest payment.  I have to deal with this every single month and there is never a solution as it continues to happen every month.  This is taking time away from my work as they call me during work hours and I have to step out every month for an hour to speak to a representative to explain this issue and it never gets resolved."

61.     On January 11, 2021, a consumer wrote to CFPB: "[My] account was closed after I paid an unreasonable late fee of {$31.00}. . . . I have paid all charges in full, as soon as possible.  I do not carry over any balance and avoid late fees.  Unfortunately, after I enrolled in paperless billing, I was charged late fees on two occasions.  The first occasion was several months ago, which I disputed via telephone and was advised that all late fees were irreversible, which I seriously doubt.  However, I received a credit to the account which I believe was in the amount of {$15.00}.  I rarely used the Children[']s Place credit card, and at times it was only to utilize the reward bucks.  At the time of the previous late fee, I explained that I had tried multiple times to pay the credit card in full online, however, the online account would not accept a payment including several days after items were charged. . . . I have not used the credit card, yet there was a {$31.00} late fee which I had no way of knowing about.  I tried to pay the account in full today, XX/XX/XXXX, and dispute it later; however, the system declined to accept the payment so it will not be processed until XX/XX/XXXX, undoubtedly charging me another late fee.  The problem is that Comenity Children[']s Place will not accept online payments for up to 1 [to] 2 weeks after charges are made, and they do not allow customers to setup electronic automatic payment

reminders, do [not] email customers regarding payment due dates or missed dates, and this is strictly a order for the company to continue to charge customers late fees."

**D.    Comenity's Knowledge Of Its Wrongful, Unlawful, and Unfair Behavior**

**1.    Defendants Received Complaints Directly From Consumers And Through The CFPB**

62.    As demonstrated above, the Consumer Financial Protection Bureau ("CFPB") operates a website where consumers can post complaints about unfair, deceptive, or abusive financial services practices and provide details about any incidents they experience.

63.    Online complaints to CFPB show that Defendants knew or should have known of their wrongful conduct of charging late fees and interest since at least 2019, yet they have continued this practice anyways.

64.    Per federal regulations, all complaints that are submitted online through the CFPB website are sent directly to the company.  The CFPB website indicates that all complaints reference herein were sent to Comenity, including the dates on which they were sent.  Defendants also monitor complaints from CFPB, and thus Defendants would have independently become aware of each complaint referenced herein separate and apart from notice received from CFPB.

65.    Every time the CFPB's website describes a consumer complaint, the website also discloses the date when the CFPB sent the complaint to the company.

66.    As alleged above, all of the above-referenced complaints were sent to Defendants by CFPB shortly after being submitted to the CFPB.

67.    For each of the following reasons, Comenity management knew or should have known about the complaints referenced above as soon as they began appearing on the CFPB website in 2019:

    a)    First, as noted above, Comenity was repeatedly contacted directly by consumers and by the CFPB about the same problem.

    b)    Second, the CFPB website is a government-run repository for complaints about unfair, deceptive, or abusive practices, and many of Comenity's customers' experiences appear on the website.  The CFPB website can provide businesses with

early warnings of unethical practices, and monitoring reports is easy because users can search for reports by company names.  Hence, since at least 2019, it required negligible effort for Comenity's management and other personnel to visit the CFPB website, type "Comenity" in the search field, and view a list of reports regarding the conduct described herein.

   c)   Third, Comenity knows about the CFPB website because for each of the reports described above, Comenity registered a response.

68.   Despite Comenity's knowledge of these complaints, Comenity continued to create roadblocks for consumers to pay off their statements in full and wrongfully charged interest and late fees.  This does not include numerous complaints that were only made to Comenity and were not otherwise publicly disclosed.

## 2.   Other Indicia Of Comenity's Knowledge

69.   In addition to receiving complaints from CFPB, Comenity also knew or should have known about the wrongful behavior from other sources.  First, online reputation management (commonly called "ORM" for short) is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on consumer services.  "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before the damage to the individuals or brand's reputation."[32]  Many companies offer ORM consulting services for businesses.

70.   Like most companies, Defendants presumably cares about their reputation and regularly monitor online consumer reviews because they provide valuable data regarding quality control issues, customer satisfaction, and marking analytics.  Reviews like those copied above would be particularly attention-grabbing for Comenity's management because extreme reviews are sometimes the result of extreme problems and – just like any other company – Comenity is

---

[32] Online Reputation, https://websolutions-maine.com/online-reputation/.

presumably sensitive to the reputational impact of negative online reviews.  Hence, Comenity's management knew or should have known about the above-reference consumer complaints shortly after each complaint was posted online.

71.     Comenity's management also knew or should have known about the wrongful behavior because of the similarity of complaints to the CFPB and the BBB.  The fact that so many consumers made similar complaints about the same bank indicates that the complaints were not the result of individual circumstances or user errors, but instead a systematic problem with the service. Here, the reports and complaints from consumers – whether made directly to Comenity or forwarded from CFPB or the BBB – were similar enough to put Comenity on notice.

<strong><u>CLASS ACTION ALLEGATIONS</u></strong>

72.     <u>Class Definition:</u> Plaintiff brings this class action on behalf of herself, and as a class action on behalf of the following putative classes (the "Class"):

**Nationwide Class**
All credit card account holders of Comenity Bank whose payments to their accounts were not credited to the accounts upon receipt and were charged a late payment fee or interest, or had a negative entry into her or his credit history during the relevant statutory period. Excluded from the Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

**California Subclass**
All credit card account holders of Comenity Bank whose payments were not credited to the accounts upon receipt and were charged a late payment fee or interest, or had a negative entry into her or his credit history during the relevant statutory period.  Excluded from the California Sub-Class are: (1) Defendants and all directors, officers, employees, partners, principals, shareholders and agents of Defendants; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

73.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

74.     <u>Numerosity and Ascertainability:</u> Plaintiff does not know the exact number of members of the putative classes.  Plaintiff is informed and believes that the total number of Class

members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout the United States and California.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

75.  <u>Typicality and Adequacy</u>: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

76.  <u>Commonality</u>: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

      a.     whether Defendants committed the conduct alleged herein;

      b.     whether Defendants' conduct constitutes the violations of laws alleged herein;

      c.     whether Defendants' conduct violates public policy;

      d.     whether Defendants engaged in unfair or unlawful business practices in marketing and distributing the Products;

      e.     whether Defendants knew or should have known that the representations were false or misleading;

      f.     whether Defendants knowingly concealed or misrepresented material facts for the purpose of inducing consumers into paying late fees and interest;

      g.     whether Defendants' representations, concealments and non-disclosures concerning the Products are likely to deceive the consumer;

      h.     whether Defendants should be permanently enjoined from making the claims at issue; and

      i.     whether Plaintiff and the Class are entitled to restitution and damages.

77.     <u>Predominance and Superiority</u>: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members.  A class action is the superior method for the fair and just adjudication of this controversy.  The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

78.     <u>Manageability</u>: The trial and litigation of Plaintiff's and the proposed Class's claims are manageable.  Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

79.     <u>Notice</u>: If necessary, notice of this action may be affected to the proposed Class through publication in a manner authorized in the California Rules of Court, Civil Code, and/or the Federal Rules of Civil Procedure.  Also, Class members may be notified of the pendency of this action by mail and/or email, through the distribution records of Defendant, third party retailers, and vendors.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT AND BREACH OF THE**
**COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of the Class and the California Subclass)**

80.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

82.     Plaintiff and Comenity have contracted for banking services, as embodied in Comenity's account agreement and related documentation.  Comenity's credit card agreement explicitly states that, when a customer does not make the minimum payment by the specified due date, the bank may charge a "late fee."[33]  However, Comenity regularly violates its contractual promises by charging late fees to customers when the customer, in fact, did make the minimum payment by the specified due date.

83.     Additionally, Comenity's credit card agreement explicitly states that, when a consumer sees an error on the statement (*e.g.,* incorrect late fee), the consumer must contact Comenity, and Comenity must investigate the error.[34]  Comenity commits itself to correcting their mistake by waiving late fees and any interest that accumulated as a result.  Yet, Comenity regularly violates its contractual promises by not waiving the late fees and charging consumers interest for the incorrect late fees.

84.     Every contract carries with it an implied covenant of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the power to specify terms constitute examples of bad faith in the performance of contracts.

85.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify contract terms, and interference with or failure to cooperate in the other party's performance.

86.     Comenity has breached the covenant of good faith and fair dealing in the contract through its policies and practices as to late fees and interest as alleged herein.  Specifically, Comenity harms consumers by exercising its contractual discretion in bad faith, even though that discretion is only vested in Comenity, in ways no reasonable consumer would anticipate.

---

[33] See Exh. A Comenity Bank Bill Payment Terms and Conditions. [insert name of agreement / terms & conditions].
[34] See id.

87.     Comenity abuses that discretion to charge customers' late fees and interest without their permission and contrary to their reasonable expectations.

88.     Specifically, Comenity regularly:

a.      Charges late fees to customers when the consumer, in fact, paid their minimum payment for the statement at issue; and

b.      Charges interest on the late fees as if the late fees are a balance that is being carried over to the new billing cycle.

89.     Comenity thus uses its contractual discretion to charge late fees and interest on statements that no reasonable consumer would believe could cause either.

90.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the account agreement.

91.     Plaintiff and members of the Classes have sustained damages as a result of Comenity's breaches of contract and breaches of the covenant of good faith and fair dealing.

92.     Plaintiff and members of the Classes are thus entitled to relief in the form of damages, restitution, injunctive and other appropriate equitable relief.

## SECOND CAUSE OF ACTION
### CONVERSION
**(On Behalf of the Class and the California Subclass)**

93.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.  This cause of action is brought in the alternative to Plaintiff's breach of contract claim.

94.     Plaintiff brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

95.     Comenity had and continues to have a duty to accurately charge, or not charge, consumers through the monthly credit card statements and to prevent the consumers' diminishment through its own wrongful acts.

96.     Comenity has wrongfully collected late fees and interest from Plaintiff and the members of the Classes, and has taken specific and readily identifiable amounts in payment of these fees and interest to satisfy them.

97.     Comenity has, and without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Classes, without legal justification.

98.     Comenity continues to retain these funds unlawfully without the consent of Plaintiff or members of the Classes.

99.     Comenity intends to permanently deprive Plaintiff and the members of the Classes of these funds.

100.    These funds are properly owned by Plaintiff and the members of the Classes, not Comenity, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Classes.

101.    Plaintiff and the members of the Classes are entitled to the immediate possession of these funds.

102.    Comenity has wrongfully converted these specific and readily identifiable funds.

103.    Comenity's wrongful conduct is continuing.

104.    As a direct and proximate result of this wrongful conversation, Plaintiff and the members of the Classes have suffered and continue to suffer damages.

105.    By reason of the foregoing, Plaintiff and the members of the Classes are entitled to recover from Comenity all damages and costs permitted by law, including all property that Comenity has wrongfully converted.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### (On Behalf of the Class and the California Subclass)

106.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.  This cause of action is brought in the alternative to Plaintiff's breach of contract claim.

107.    Plaintiff brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

108.    As a result of Defendants' unlawful practice of charging of late fees and interest on credit card statements, Defendants were enriched at the expense of Plaintiff.

109.    Defendants charged Plaintiff and member of the Classes late fees and interest, which were not legally applicable because the payments were paid on time.

110.    Thus, it is against equity and good conscience to permit Defendants to retain the ill-gotten benefits received from Plaintiff and the members of the Classes.

111.    It would be unjust and inequitable for Defendants to retain the benefit, warranting restitutionary disgorgement to Plaintiff and members of the Classes of all monies paid for the late fees and interest, and/or all monies paid for which Plaintiff and the Class members did not receive benefit.

112.    As a direct and proximate result of Defendants' actions, Plaintiff and members of the Classes have suffered damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 15 U.S.C. § 1666c**
**(PROMPT AND FAIR CREDITING OF PAYMENTS)**
**(On Behalf of the Class and the California Subclass)**

113.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

114.    Plaintiff brings this claim individually and on behalf of the proposed Class and California Subclass against Defendants.

115.    Section 1666c provides that "Payments received from an obligor under an open end consumer credit plan by the creditor shall be posted promptly to the obligor's account as specified in regulations of the Bureau.  Such regulations shall prevent a finance charge from being imposed on any obligor if the creditor has received the obligor's payment in readily identifiable form, by 5:00 p.m. on the date on which such payment is due, in the amount, manner, and location indicated by the creditor to avoid the imposition thereof."

116.    Plaintiff and members of the Classes held an "open end consumer credit plan" as defined by 15 U.S.C. § 1602(j), which "mean[s] a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance."

117.    Defendants constitute "creditor[s]" as defined by 15 U.S.C. § 1602(g), which "refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of the indebtedness or, if there is no such evidence of indebtedness, by agreement.  Notwithstanding the preceding sentence, in the case of an open-end credit plan involving a credit card, the card issuer and any person who honors the credit card and offers a discount which is a finance charge are creditors."

118.    Plaintiff and members of the Classes held "credit cards" as that term is defined by 15 U.S.C. § 1602(i), to mean "any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor, or services on credit."

119.    As defined by 15 U.S.C. § 1602(b), "[t]he term 'Bureau' means the Bureau of Consumer Financial Protection."

120.    Section 1666c is complemented by 12 C.F.R. § 226.10 which states that "A creditor shall credit a payment to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance charge or other charge."

121.    12 C.F.R. § 226.10(b)(1) states that "A creditor may specify reasonable requirements for payments that enable most consumers to make conforming payments."

122.    12 C.F.R. § 226.10(b)(2) then further defines the phrase "reasonable requirements" by way of examples including "Specifying that checks or money orders should be sent by mail" or "that payment be made in U.S. dollars."

123.    However, this limitation on payment methods is qualified by 12 C.F.R. § 226.10(b)(4) which states that "If a creditor promotes a method for making payments, such payments shall be considered conforming payments in accordance with this paragraph (b) and shall be credited to the consumer's account as of the date of receipt, except when a delay in crediting does not result in a finance or other charge."

124.    Specifically, Defendants have violated this section by failing to credit Plaintiff's and members of the Classes accounts on the date they received Plaintiff's and members of the Classes payment.

125.    As a result of Defendants' violation, Plaintiff and members of the Classes have suffered damages in an amount to be proven at trial.

126.    As explained by the Consumer Financial Protection Bureau in what is known as Regulation Z, the Bureau has authority "to implement the Federal Truth in Lending Act." Exercising that authority, the Bureau set forth the enforcement provisions in 12 C.F.R. § 1026.1(e) noting that "Sections 112, 113, 130, 131, and 134 contain provisions relating to liability for failure to comply" with the statute and regulations set forth herein.

127.    Accordingly, if a creditor fails to comply with the requirements set forth herein, "it may be held liable to the consumer for actual damage and cost of legal action together with reasonable attorney's fees."  Moreover, in a class action, the creditor is liable for "such amount as the court may allow."

128.    Plaintiff, therefore, respectfully requests judgment against Defendants for the relief set forth herein, including statutory damages, pre-judgment and post-judgment interest, declaratory relief, attorneys' fees and costs; and any other relief as may be just and proper.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF UNFAIR COMPETITION LAW**
**(CAL. BUS. & PROF. CODE § 17200, *et seq.*)**
**(Unlawful and Unfair Prongs of the Act)**

129.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if fully set forth herein.

130.     Plaintiff brings this claim individually and on behalf of the proposed California Subclass against Defendants.

131.     California Business and Professions Code § 17200 prohibits any "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendants have engaged in unlawful, unfair, and deceptive acts, and untrue and misleading advertising in violation of California Business & Professions Code § 17200.

132.     As alleged herein, Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions.  Specifically, Plaintiff signed up for Defendant's credit card services for her personal use.  In doing so, Plaintiff relied upon the representations referenced above.  Plaintiff would not have signed up for Defendants' credit card had she known that Defendants wrongfully charged late fees and interest.

133.     **Unlawful Business Practices:** The actions of Defendants, as alleged herein, constitute illegal and unlawful practices committed in violation of the Business & Professions Code § 17200.

134.     As alleged herein, Defendants have violated 15 U.S.C. § 1666c by failing to credit Plaintiff's account on the date they received Plaintiff's payment.  Additionally, Defendants have breached the covenant of good faith and fair dealing in the contract through its policies and practices as to late fees and interest as alleged herein.  Last, Defendants have wrongly converted property by erroneously collecting late fees and interest from Plaintiff and the members of the Class.

135.     Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

136.     **Unfair Business Practices:** California Business & Professions Code § 17200 also prohibits any "unfair ... business act or practice."

137.     Defendants' acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code

§ 17200 *et seq.* in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

138.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

139.    Pursuant to section 17203 of the California Business & Professions Code, Plaintiff and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including, but not limited to: (a) engaging in any of the illegal, misleading, unlawful, unfair and/or deceptive conduct described herein; and (b) engaging in any other conduct found by the Court to be illegal, misleading, unlawful, unfair and/or deceptive conduct.

140.    In addition, Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such illegal practices as provided in Business & Professions Code § 17203, and for such other relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and as representative of all other persons similarly situated, prays for judgment against Defendants, as follows:

A.    For an order certifying the the action may be maintained as a Class Action under Fed. R. Civ. P. 23;

B.    For an order permanently enjoining Defendants from pursuing the policies, acts, and practices complained of herein;

C.    For an order requiring Defendants to pay restitution to Plaintiff and all members of the Class;

D.    For an order requiring Defendants to pay damages to Plaintiff and all members of the Class;

E.    For an order requiring Defendants to pay punitive damages to Plaintiff and all

members of the Class;

F.      For an order declaring that Defendants have violated 15 U.S.C. § 1666c and its implementing regulations and that Defendants shall be required to, amongst other things, comply with 15 U.S.C. § 1666c and its implementing regulations, provide corrective disclosures to current and former account holders, and continue to provide any such corrective and legally mandated disclosures to new account holders in the future;

G.      For prejudgment interest from the date of filing this suit;

H.      For reasonable attorneys' fees;

I.      For costs of this suit; and

J.      Such other and further relief as the Court may deem necessary and appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable.


Dated: August 11, 2021                       Respectfully submitted,

                                             **BURSOR & FISHER, P.A.**


                                             By:_____*/s/ L. Timothy Fisher*_____
                                                     L. Timothy Fisher

                                             L. Timothy Fisher (State Bar No. 191626)
                                             Sean L. Litteral (State Bar No. 331985)
                                             1990 North California Boulevard, Suite 940
                                             Walnut Creek, CA  94596
                                             Telephone: (925) 300-4455
                                             Facsimile:  (925) 407-2700
                                             E-Mail: ltfisher@bursor.com
                                                       slitteral@bursor.com

                                             *Attorneys for Plaintiff*

**EXHIBIT A**



# Comenity Bank Bill Payment Terms and Conditions

This Online Bill Payment and Pay by Text User Agreement ("Agreement") is provided by Comenity Bank to govern the use of Comenity Bank's Online Bill Payment and Pay by Text Services. The Comenity Bank Online Bill Payment and Pay by Text Services are additionally governed by any other separate agreement or agreements you may have with Comenity Bank or any of its affiliates or subsidiaries, including but not limited to, the Credit Card Account Agreement and any amendments or changes made to the Credit Card Account Agreement or this Agreement.

Prior to using Online Bill Payment and Pay by Text services, Comenity Bank requests your consent to provide you important information electronically. You understand and agree that Comenity Bank may provide you with all required disclosures regarding your Online Bill Payment and/or Pay by Text in electronic form. At your request, we will provide you with paper copies of these disclosures. You have the right to withdraw consent, without a fee. Please call us at _1-866-234-2029_ (Pottery Barn, Pottery Barn Kids, and PBteen) (TDD/TTY: _1-800-695-1788_) to withdraw your consent to receive electronic disclosures.

In order to receive electronic communications, you will need:

- access to the Internet,
- have a valid email address,
- have a web browser which supports HTML, SSL-encryption, JavaScript and CSS. Visit the _Common Security Questions_ page for additional web browser information.
- the capability to download and print these disclosures, and Adobe Reader to access PDF files. You may download Adobe Reader for free at _https://get.adobe.com/reader/_.

By Continuing, you confirm that your system meets these requirements and that you have the capability to access and download or print electronic disclosures. We recommend that you retain a copy of these disclosures for your records.

By using Online Bill Payment and/or Pay by Text, you are electronically signing and agreeing to your payment authorization. You acknowledge that you have read, printed/saved, understand and agree to be bound by the terms of your authorization. Comenity Bank will email you a copy of your payment authorization to the email address on file. If you wish to cancel an authorization you may do so according to the payment cancellation schedule described in the 'Services' section of this agreement.

This Online Bill Payment service is offered by Comenity Bank for all accounts, however, Pay by Text Services varies by Bank. If Comenity Bank offers the ability to Pay by Text for your account, the functionality will be available to set up on Card Settings and Services on Account Center. In order to use Pay by Text, you need to set it up and agree to the terms.

By using Comenity Bank's Online Bill Payment and Pay by Text Services, you agree to be bound by the terms and conditions contained in this Agreement.

## The following definitions apply to this Agreement:

**"Account"** is defined as the Pottery Barn credit card Account issued by Comenity Bank.

**"Business Day"** is defined as Monday through Friday excluding Federal Holidays.

**"You" and "Your"** shall mean the person, persons or entities in whose name the account is carried on the books of Comenity Bank and shall include the masculine, feminine, and neuter genders and the plural as well as the singular wherever the context so permits.

**"Us" "Our" "We" and "Payee"** shall mean Comenity Bank and all of its affiliates subsidiaries, service providers,

we may not provisionally credit your account. If we decide that there was no error, Comenity Bank will send you a written explanation within three business days after we finish the investigation. You may ask for copies of the documents that were used in the investigation.

# Customer Liability for Unauthorized Transfers

Notify Comenity Bank at once if you believe your password has been stolen at *1-866-234-2029* (TDD/TTY: *1-800-695-1788*). Telephoning is the best way to limit the amount of loss.

# Comenity Bank's Liability for Failure to Make Bill Payments

If Comenity Bank does not complete a bill payment to your Account on time or in the correct amount according to this Agreement and your Credit Card Agreement (including, but not limited to, all rules and regulations governing your Account), we will be liable for all losses not to exceed the amount of the bill payment. However, there are exceptions. Comenity Bank will not be liable for, including but not limited to, the following:

- If, through no fault of Comenity Bank, you do not have enough money in your account to complete the transfer; or
- If circumstances beyond our control (such as fire or flood) prevent the transfer, despite reasonable precautions that have been taken; or
- If the funds in the account are subject to legal process or other encumbrance restricting such transfer; or
- If the Online Bill Payment and Pay by Text service were not functioning properly due to the failure of electronic or mechanical equipment or communications lines, telephone or other interconnect problems, normal maintenance, unauthorized access, theft, operator errors, severe weather, earthquakes, floods and strikes or other labor problems; or
- If there is an allegation of fraudulent activity concerning the account; or
- If transaction instructions are not actually received by Comenity Bank (because, for example, issues associated with Internet and/or telephone service providers), Comenity Bank may not be held accountable for any loss resulting from the delay or failure to transmit instructions arising from user error, malfunction of equipment, natural impediments, and/or inaccurate or incomplete information.

# General Disclaimer

Comenity Bank hereby disclaims any warranties, endorsement or representations, express or implied, related to any product, service, advertisement or other information contained herein. This includes any content contained, distributed, linked or downloaded from the site. Any products or services from this site are to be used at your own risk, with no obligations or liabilities by Comenity Bank.

Any exceptions to this general disclaimer would be outlined within any applicable Service Agreement. Comenity Bank also does not guarantee the quality of any product or displayed materials that are purchased or used by you as a result of an advertisement to which you respond. It will be within the sole discretion of Comenity Bank to correct any errors or to omit any portion of the services, products or materials contained herein.

# Copyright Information

All logos, service marks, trade names and trademarks contained within this site are the sole property of Comenity Bank or ADS Alliance Data Systems, Inc. It is prohibited for anyone to use such trademarks without the written consent of Comenity Bank. This site may also contain such logos and trademarks of some third party, in which case it is also prohibited to use these marks without consent.

The content contained in this site is protected by copyright law. It is prohibited for users to display, distribute, publish, sell, transmit, license, or create derivative works or to use any content that is contained within the Comenity Bank website for any purpose whatsoever. Any unauthorized use of this information may be punishable by law.

By using the Online Bill Payment and Text Services you agree to the terms of this Agreement, if you are not an authorized Bill Payment user or if you do not consent to continued monitoring of activity on the system, please cease using such services.

agents, and assigns and subsidiaries.

# Questions About Online Bill Payment and Text Services

The Frequently Asked Questions (FAQs) provide guidance on how to use Comenity Bank's Online Bill Payment and Pay by Text Services. As a part of this Agreement, you agree to become familiar with the information contained in the Payments and Text Services FAQs prior to using Comenity Bank's Online Bill Payment and Text Services. The FAQs may be reviewed online during your session by selecting the FAQ link or by visiting *http://www.comenity.net/potterybarn/common/help/PaymentsAccountCenterHelp.xhtml*. All information contained in the FAQs, and any updates to them, are part of this Agreement.

# Services

Online Bill Payment and Pay by Text Services allow you to access information about your accounts, to initiate electronic transactions to your designated account or accounts (each, a "Banking Account") and to make payments on your Comenity Bank Pottery Barn credit card Account (each, a "payment"). Such services include but are not limited to the following:

- Access account information for your Pottery Barn credit card Account.
- Make a Payment on your Pottery Barn credit card Account. Payments are limited to: minimum payment, statement balance, total outstanding balance or any amount designated by customer so long as it is equal to or less than the outstanding balance.
- Withdrawals from your Banking Account generally will occur within two business days of the effective date, but timing may vary depending on your financial institution's processing schedule. Successful funds transfer will cause a debit from your Banking Account and a Payment to your Pottery Barn credit card Account for the payment amount you specify.
- A scheduled payment can be edited or deleted within the following timeframes:
  - Account Center Online: by 11:59 p.m. Eastern Time (ET), on the day of your scheduled payment date. To delete a payment, visit the Payments page, then select the edit pencil located next to the scheduled payment you wish to delete.
  - Through Customer Care: by 5:59 p.m. Eastern Time (ET), at least 3 business days before the scheduled payment date.
  - By Mail or Account Center's Secure Message Center: before 6:00 p.m. Eastern Time (ET), at least 3 business days before the scheduled payment date.

Your available credit will be increased after the funds are successfully transferred. However, all of your payment may not be available for immediate access.

Through the online account, customers may submit account maintenance requests and inquiries to a Pottery Barn credit card customer service representative via a secure channel. The customer service representative will then respond to your request or inquiry through secure message center or an email. Since email is not a secure communication channel, this reply will not contain any confidential or sensitive information such as your Pottery Barn credit card Account number or personal information.

# Additional Online Bill Payment and Pay by Text Services Terms and Conditions

By directing Comenity Bank to initiate a payment through Online Bill Payment or Pay by Text, you authorize Comenity Bank to withdraw from your Banking Account the amount of funds required to complete the assigned transaction. You regard requests for account services, instructions to change existing account information or services, and other communications received via Comenity Bank's Online Bill Payment and Pay by Text services as legal endorsements. As such, all correspondence initiated via Comenity Bank's Bill Payment systems shall command the legal authority of a written request authorized by your signature.

In the event that we make an error in processing a payment, you authorize us to correct the error by initiating an electronic credit or debit to your applicable Banking Account in the amount of such error on or after the date such error occurs. If you make a typographical or similar error in providing us with information about your Banking Account, you authorize us to correct the error, after verifying the correct information.

You agree that we are under no obligation to reinitiate any rejected payments. You understand that your financial institution may impose fees in connection with rejected payments, and you agree that we do not have any liability to you for such fees. If you know that a payment will be rejected by your financial institution (e.g., because there is not enough money in your Banking Account), you should contact us so that alternate arrangements can be made.

If a payment is returned (for example, due to incorrectly-entered bank account information or a closed bank account), we may suspend your Online Bill Payment and Pay by Text services. If you cancel a payment, or we terminate or suspend your access to Online Bill Payment and Pay by Text, you must use an alternative method for making your monthly payment (for example, by mail, phone — which may require a pay by phone fee — or in-store with the retailer, if available). Please refer to your monthly billing statement for more details regarding payment methods.

# Customer Service

You may contact Comenity Bank by calling *1-866-234-2029* (TDD/TTY: *1-800-695-1788*). Customer Care hours are Monday through Saturday 8:00 a.m. to 9:00 p.m. Eastern Time (ET).

Customer Service Professionals may provide assistance only within the guidelines set forth by Comenity Bank and as required by law. Customer Service Professionals are not authorized to negotiate any of the terms of this Agreement or the Credit Card Account Agreement.

The same encryption process used to secure your account information secures messages sent via Comenity Bank Online Bill Payment and Pay by Text services. The Customer Care feature provided through your online account may be used to transmit confidential account information to Comenity Bank.

Comenity Bank is responsible for making reasonable efforts to fulfill only those account requests actually received via Comenity Bank Online Bill Payment and Pay by Text Services. Comenity Bank may not be held accountable for any loss resulting from the delay or failure to transmit a message or process a payment via Online Bill Payment and/or Pay by Text arising from user error, malfunction of equipment, natural impediments, and/or inaccurate or incomplete information.

# Fees

Comenity Bank offers various payment channels and certain payment channels may be subject to a fee. If a fee applies to any particular payment, we will disclose the applicable fee to you (and you may withdraw your request) before you authorize any payment or payments.

# Electronic Funds Transfer Errors

In case of errors or questions about your electronic transfers, contact Comenity Bank at *1-866-234-2029* (TDD/TTY: *1-800-695-1788*) or write to us as soon as you can at Customer Service Department:

Comenity Bank

PO Box 182273

Columbus, OH 43218-2273

Comenity Bank must hear from you within sixty days after the first statement on which the problem appeared was sent to you. Please tell us your name and account number, describe the error or the transfer about which you are unsure, and explain why you believe there is an error, and tell us the dollar amount of the suspected error. If you tell us orally, we may require that you send us your complaint or questions in writing within ten business days.

Comenity Bank will tell you the result of our investigation within ten business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five days to investigate your complaint or questions. If we decide to do so, we will provisionally credit your account within ten business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

If Comenity Bank asks you to state your complaint or question in writing and we do not receive it within ten days,

*Offer is exclusive to Pottery Barn Credit Card holders enrolled in the Pottery Barn Credit Card Rewards program. Each transaction placed on a promotional credit Plan(s) will not earn reward(s). This rewards program is provided by Pottery Barn and its terms may change at any time. For full Rewards Terms and Conditions, please see comenity.net/potterybarn.

Credit card offers are subject to credit approval.
Pottery Barn Credit Card Accounts are issued by Comenity Bank.

Keep this portion for your records.

**What To Do If You Think You Find A Mistake On Your Statement**

If you think there is an error on your statement, write to us at: Comenity Bank PO Box 182782, Columbus, Ohio 43218-2782.

In your letter, give us the following information:
- *Account information:* Your name and account number.
- *Dollar amount:* The dollar amount of the suspected error.
- *Description of Problem:* If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us within 60 days after the error appeared on your statement.

You must notify us of any potential errors *in writing*. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**

If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.

To use this right, all of the following must be true:

1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (*Note:* Neither of these is necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)

2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.

3. You must not yet have fully paid for the purchase.

If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing* at: Comenity Bank PO Box 182782, Columbus, Ohio 43218-2782.

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. If at that point, if we think you owe an amount and you do not pay we may report you as delinquent.

**HOW TO AVOID PAYING INTEREST.** Your due date is at least 25 days after the close of each billing cycle. We will not charge you interest on purchases if you pay your entire balance by the due date each month. We will begin to charge interest on new purchases made under a Low APR, Equal Payment or Budget Payment Credit Plan from the date of purchase.

**BALANCE COMPUTATION METHOD.** We calculate interest separately for each type of balance on your account using a "Daily Balance" to determine interest charges for each billing period. We figure the interest charge on your account by applying the periodic rate to the "daily balance" of your account for each day in the billing cycle. To get the "daily balance" we take the beginning balance of your account each day, add any new purchases and fees, and subtract any payments or credits (treating any net credit balance as a zero balance). This gives us the daily balance.

**CREDIT REPORTING.** We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**NOTICE OF CREDIT REPORT DISPUTES**

If you believe the account information we reported to a consumer reporting agency is inaccurate, you may submit a direct dispute to Comenity Bank PO Box 182789, Columbus, Ohio 43218-2789.

Your written dispute must provide sufficient information to identify the account and specify why the information is inaccurate:
- **Account Information:** Your name and account number
- **Contact Information:** Your address and telephone number
- **Disputed Information:** Identify the account information disputed and explain why you believe it is inaccurate
- **Supporting Documentation:** If available, provide a copy of the section of the credit report showing the account information you are disputing

We will investigate the disputed information and report the results to you within 30 days of receipt of the information needed for our investigation. If we find that the account information we reported is inaccurate, we will promptly provide the necessary correction to each consumer reporting agency to which we reported the information.

**PAYMENTS MARKED "PAID IN FULL".** All written communications regarding disputed amounts that include any check or other payment instrument marked with "payment in full" or similar language, must be sent to: 6550 North Loop 1604 East, Suite 101, San Antonio, TX 78247-5004. DO NOT USE THE ENCLOSED REMITTANCE ENVELOPE.
· We may accept payment sent to any other address without losing any of our rights.
· No payment shall operate as an accord and satisfaction without prior written approval.

**CUSTOMER SERVICE.** Visit comenity.net/potterybarn (Pottery Barn, Pottery Barn Kids, and PBteen) or call 1-866-234-2029 (Pottery Barn, Pottery Barn Kids, and PBteen) (TDD/TTY 1-800-695-1788).

**TELEPHONE MONITORING.** To provide you with high-quality service, phone communication with us is monitored and/or recorded.

**ADDITIONAL INFORMATION.** The following designations, when appearing on the front of your statement, mean the following: V means variable rate (this rate may vary); WV INT PAY RQ means WAIVE INTEREST, PAYMENT REQUIRED; WV INT EQ PY means WAIVE INTEREST, EQUAL PAYMENT; WV INT LOW PMT means WAIVE INTEREST, LOW PAYMENT; DF INT PY RQ means DEFER INTEREST, PAYMENT REQUIRED; DEF INT EQ PY means DEFER INTEREST, EQUAL PAYMENT; DF INT LOW PMT means DEFER INTEREST, LOW PAYMENT and LOW APR EQ PAY means LOW APR, EQUAL PAYMENT. If you have a variable rate account, your periodic rates may vary. You may pay all of your Account balance at any time without penalty.

Send all inquiries to: CUSTOMER SERVICE, PO Box 182273, Columbus, Ohio 43218-2273.

Send all bankruptcy notices and related correspondence to Comenity Bank, Bankruptcy Department, PO Box 182125, Columbus, Ohio 43218-2125.

**NOTICE ABOUT ELECTRONIC CHECK CONVERSION.** When you provide a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction. When we use information from your check to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day we receive your payment, and you will not receive your check back from your financial institution.

**PAYMENTS.** Pay your Account by the payment due date by the time listed below. If we do not receive your payment in a correct format (outlined below) it may not be credited to your Account for up to five days, or may be rejected. Also, your payment must reach us by the payment cutoff time that applies to the payment method you select.
**Correct Format.** Correct format for different payment methods include:
*Mailing or Overnight:* Send a personal check, money order, traveler's check or cashier's check payable in U.S. dollars, to the name and address shown on this Statement in the payment stub area containing your balance and minimum payment amount. Be sure to include your payment stub, do not staple or clip your payment to the stub, include your account number on your check, use the envelope provided with your Statement, send one payment with one payment stub and do not send any correspondence with your payment. You should overnight a payment to 6550 North Loop 1604 East, Suite 101, San Antonio, TX 78247-5004 and the additional format requirements are the same as other mailed payments unless there is a dispute, in which case you follow the Payments Marked "Paid In Full" section above. Do not send cash or gift certificates. *Pay By Phone:* You can call us toll free at 1-866-234-2029 (Pottery Barn, Pottery Barn Kids, and PBteen) (TDD/TTY 1-800-695-1788) to make a payment by telephone, which may include a fee. *Online:* You can make a payment online at comenity.net/potterybarn (Pottery Barn, Pottery Barn Kids, and PBteen).
**Payment Cutoff Times.** Payment cutoff times/deadlines for us to receive payments are by the due date on this Statement in the payment stub area at the following times: *Mailing and Overnight:* By 6:00 pm Eastern Time (E.T); *Pay By Phone:* By 6:00 pm (E.T); *Online:* By 6:00 pm (E.T).

**New Information**

Title (optional) _____  First Name _____  MI _____

Last Name _____  Soc. Sec. No. _____

Street Address _____

Apt. No. _____  RR _____  PO Box _____

City _____  State _____  Zip Code _____  Foreign Map Code _____

Home Phone _____  Work Phone _____

Email Address _____

| 2021 totals year to date | |
|---|---|
| Total fees charged in 2021 | $29.00 |
| Total interest charged in 2021 | $153.94 |

## Interest charge calculation

Your Annual Percentage Rate (APR) is the annual interest rate on your account. See BALANCE COMPUTATION METHOD on page 2 for more details. Minimum interest charge may exceed interest charge below, per your credit card agreement.

| TYPE OF BALANCE | APR | BALANCE SUBJECT TO INTEREST RATE | INTEREST CHARGE |
|---|---|---|---|
| Purchases | 26.9900% (v) | 6,940.01 | 153.94 |

## Additional important messages

**Important Reminder:** If you make a purchase with this credit card using a promotional plan, the promotional plan expiration date and payment due date may be different. This means that if you have any remaining promotional plan balance after the promotional plan expiration date, the balance and any accrued interest (if applicable), will move to your regular revolving plan on the next billing statement.

**How to avoid or minimize interest charges:** Be sure to pay any promotional plan balance in full on or before the plan expiration date shown in the "Details of your plans" section of your statement. Please also keep an eye out for notifications of when your promotional plan(s) are nearing their expiration date—you'll see them in the red box on page 1 of your statement. If you have questions, please call us toll-free at 1-866-234-2029 (TDD/TTY:1-800-695-1788). To learn more about how promotional plans work, visit comenity.com/financial-education. We're always happy to help.

**Affected by COVID-19? Comenity Bank Offers Support**
As the bank that manages your credit card, our hearts go out to those affected by the coronavirus (COVID-19) pandemic.
**The support we're extending to you.** If you're experiencing financial hardship because of COVID-19, please call 1-866-234-2029 (TDD/TTY: 1-800-695-1788) to discuss how we may be able to help.
**Account Center is available 24/7 for you to manage your POTTERY BARN account online.** You can make payments and view your balance, transactions and statements online. Not yet registered? Visit comenity.net/potterybarn, enter your POTTERY BARN credit card account number and ZIP code, then verify your identity.
**We're looking out for you.** We remain focused on the health and well-being of our customers and associates, and we'll continue to stay on top of what's happening during the pandemic so we can best support you.

***Offer is exclusive to Pottery Barn Credit Card holders enrolled in the Pottery Barn Credit Card Rewards program. **Each transaction placed on a promotional Credit Plan(s) will not earn reward(s)**. This rewards program is provided by Pottery Barn and its terms may change at any time. For full Rewards Terms and Conditions, please see comenity.net/potterybarn.

**Earning balance as of Apr 21, 2021. Please refer to comenity.net/potterybarn to get your most accurate and up to date balance.

Credit card offers are subject to credit approval.
Pottery Barn Credit Card Accounts are issued by Comenity Bank.

How can you take charge against ID Theft? Visit idtheft.gov to find out.

08700114   00032960   5856373533015256   000003500   000018294

Another perk of going paperless? View, download, and print 12 months of statements, anytime 24 hours a day. It's free! https://comenity.net/potterybarn/paperless